UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WILLSON,

        Petitioner,

                                                    CASE NO. 04-CV-71137-DT
v.                                      HONORABLE PAUL D. BORMAN

RAYMOND BOOKER,

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

**I.      Introduction**

      Petitioner Michael Willson, a state prisoner presently confined at the Ryan Correctional Facility in Detroit, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted of first-degree premeditated murder, assault with intent to commit murder, and two counts of first-degree criminal sexual conduct following a jury trial in the Wayne County Circuit Court in 2002.  He was sentenced to life imprisonment without the possibility of parole on the murder conviction and concurrent terms of 40 to 60 years on the assault and criminal sexual conduct convictions.

      In his pleadings, Petitioner raises claims of prosecutorial misconduct, double jeopardy, and ineffective assistance of trial counsel.  For the reasons stated below, the Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

1

II.     **Facts and Procedural History**

Petitioner's convictions arise from the stabbing death of his girlfriend, Cassandra Young, and the sexual assault and stabbing of her 17-year-old daughter, Shanna Young, at the Youngs' home in Detroit, Michigan on April 22, 1999.

At trial, Shanna Young testified that she returned home from a friend's house around 11:00 p.m. that day and saw a green mountain bike in the hallway, which she believed belonged to Petitioner. She explained that Petitioner was her mother's boyfriend and she had known him for six or seven months. Shanna went to bed but awoke around 1:00 a.m. because she heard her mother screaming for help and yelling, "Stop, please stop...stop, Mike, stop...Shanna, help." It sounded like someone was hitting her mother. Shanna went to her mother's bedroom door, but it was locked. After a minute or so, the screaming stopped and Petitioner opened the door. She could see her mother on the floor bleeding, but Petitioner tried to block her view. Petitioner then grabbed her, held a knife to her neck, and told her to be quiet before he killed her. He took her to her mother's bed and removed her clothes. He then forced her onto the couch in the living room, forced her legs open and tried to penetrate her for an hour. She said that he only got part of his penis in and she never saw him ejaculate. He then moved her to a chair and put his penis back into her vagina for about five minutes. Shanna stated that she had never had sexual intercourse before the assault.

After the sexual assault, Petitioner stabbed her several times in the area of her left breast. He then went into her mother's bedroom and put on his green jogging suit. Before leaving the house, he stabbed Shanna again under her right breast. Shanna remained still for five minutes, then put on pants, applied pressure to her wounds, and went to her friend's house across the street. When she arrived, she said that Petitioner had stabbed her and killed her mother. She

2

was eventually taken to the hospital where she was treated for her injuries.  Shanna admitted that

she did not like Petitioner and did not like him coming to her house.  She also acknowledged that

another man would sometimes come to their house on a bicycle.

　　　　Nichelle Lindsley, Shanna's friend, and her aunt, Amanda Lindsley, testified that Shanna

came to their house covered in blood on the night of the incident.  Shanna looked like she was in

shock and said that "Mike" had raped her and killed her mother.  They called 911.

　　　　The medical examiner testified that Cassandra Young died from nine stab wounds,

mostly to the chest.  She also suffered a cut on her neck and some defensive wounds.  Her blood

tested positive for cocaine.

　　　　Detroit Police Officer Victor Jones testified that he responded to the scene of the crime

during the early morning hours on April 23, 1999.  He observed blood on the stairs and the sofa

chair and saw a trail of blood to the bedroom.  He found Cassandra Young's body lying in a pool

of blood against the bedroom door.  Cassandra was naked with cuts on her arms and neck.

Bloodstained underwear with a soiled sanitary napkin were near her feet.  Officer Jones further

testified that he questioned Shanna Young while she was in the ambulance.  When he asked her

who committed the crime, she responded that it was "Michael," her mother's boyfriend who

lived down the street.

　　　　Detroit Police Officer Keith Terry testified that he arrested Petitioner around 12:30 p.m.

on April 23, 1999.  As he drove up the street in a marked car, he saw Petitioner standing on a

porch.  When the police were a few houses away, Petitioner looked at them, then went into the

house.  When the officers arrived, the door was locked.  The officers forced the door open and

searched the house.  They found Petitioner hiding in the basement, rolled up in some carpet.

Later that day, the police collected Petitioner's clothing and observed some stains on the clothes.

Lachanda Neely testified that she had dated Petitioner for 10 years and had two children with him.  They maintained a sexual relationship.  She stated that Petitioner was at her house from around 9:30 p.m. to 11:00 p.m. on April 22, 1999.  He left on his mountain bike, wearing jeans, black boots, a blue jogging sweater, a white and blue jacket, and green jogging pants that he wore under his jeans.  He returned at 5:30 a.m. the next day wearing the same clothes.  He told her that his bike was stolen while he was at a nearby store.

Detroit Police evidence technicians testified about clothing and other evidence they recovered from Petitioner and the crime scene during their investigation.

Susan Greenspoon, a forensic serologist for the Detroit Police Department, testified that she performed DNA analysis on several items in this case.  She stated that Petitioner's DNA was consistent with sperm on a vaginal swab taken from Cassandra Young and with a partial profile from sperm on a rectal swab.  Greenspoon testified that neither Petitioner, Cassandra Young, or Shanna Young could be excluded from the partial DNA profile taken from a jacket found at the crime scene.  Greenspoon also stated that the DNA profile taken from blood on Petitioner's shorts was consistent with a blood sample taken from Cassandra Young.

Petitioner testified in his own defense at trial.  He stated that he had been involved in a sexual relationship with Cassandra Young for five or six months, and that he also maintained such a relationship with Lachanda Neely.  He spent time at both of their homes when he was not at work because he lived with his mother.  Petitioner testified that he spent the night and had sex with Cassandra Young at her home on April 21, 1999 and rode his bike to work at a collision repair shop the next morning.  After work on April 22, 1999, he went to Neely's house from around 10:00 p.m. until he left to go to Cassandra house.  When he arrived at Cassandra's, she was getting high with two other men.  They argued and he left.  On his way to a liquor store, he

4

met a woman named Kim and asked her to meet him at the house of a man named Rock. Petitioner then went into the store and bought beer.  When he left the store, his bike was gone. He then walked for a time with a man named Dubois and proceeded to Rock's house.  Several women, including Kim, and Rock were getting high.  He smoked crack with them and had sex with Kim.  He left Rock's house around 1:30 a.m. and walked 45-50 minutes to Neely's house. He stayed at Neely's house until his brother picked him up for work at 7:00 a.m. the next day.

While he was at work on April 23, 1999, his mother called him and told him that the police had been to her house saying that he killed someone.  He returned to Neely's house and was waiting for her to take him to a lawyer when the police arrived and took him into custody. He explained that he hid from police so that he could have time to see his lawyer.  Petitioner admitted that he did not tell police about Rock or the crack house, but said that he did not do so because he did not know when the crime occurred and he did not want police to raid the crack house.  Petitioner denied being at the Young household when the crime was committed, denied having sex with Shanna Young, and denied hurting either Cassandra or Shanna Young.

At the close of trial, the jury convicted Petitioner of first-degree premeditated murder, second-degree murder, assault with intent to murder, and three counts of first-degree criminal sexual conduct.

The trial court subsequently sentenced Petitioner to life imprisonment without the possibility of parole on the first-degree murder conviction and concurrent terms of 40 to 60 years on the remaining convictions.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the same prosecutorial misconduct and double jeopardy claims contained in the current petition.  He also filed a *pro per* motion to remand for a hearing on the effectiveness

of trial counsel.  The Michigan Court of Appeals denied the motion to remand.  *People v. Willson*, No. 224823 (Mich. Ct. App. Aug. 22, 2001).  The Michigan Court of Appeals vacated Petitioner's second-degree murder conviction and one of his criminal sexual conduct convictions on double jeopardy grounds, but affirmed the remaining convictions.  *People v. Willson*, No. 224823, 2002 WL 484617 (Mich. Ct. App. March 26, 2002) (unpublished).  Petitioner filed a delayed application for leave to appeal and a motion to remand with the Michigan Supreme Court, both of which were denied.  *People v. Willson*, 467 Mich. 948, 656 N.W.2d 525 (2003).  Petitioner's motion for reconsideration was also denied.  *People v. Willson*, 467 Mich. 948, 661 N.W.2d 242 (2003).

Petitioner thereafter filed the present federal habeas petition asserting claims of prosecutorial misconduct, double jeopardy, and ineffective assistance of trial counsel. Respondent has filed an answer to the petition contending that the claims should be denied based upon procedural default and/or for lack of merit.

## III.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination

6

of the facts in light of the evidence presented in the State court
proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Analysis**

A.    Prosecutorial Misconduct Claims

Petitioner first claims that he is entitled to habeas relief because the prosecutor engaged in misconduct.  Specifically, Petitioner asserts that the prosecutor:  (1) misled the jury about DNA evidence, (2) improperly shifted the burden of proof, (3) misrepresented the law and issue of premeditation, (4) urged jurors to find guilt based upon woman's intuition, (5) improperly used gruesome photographs to elicit sympathy, and (6) knowingly violated the trial court's sequestration order.  Respondent contends that these claims are barred by procedural default and/or lack merit.

1.    Procedural Default

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  In *Wainwright v. Sykes*, 433 U.S. 72, 85 (1977), the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default.  In such a case, a federal court must

8

determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief, the court relied upon a state procedural bar – Petitioner's failure to object to the alleged misconduct at trial – with regard to the alleged errors concerning the DNA evidence, premeditation, women's intuition, and the gruesome photograph. *See Willson*, 2002 WL 484617 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court

9

of Appeals denied these claims based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

In this case, Petitioner arguably asserts that trial counsel was ineffective as cause to excuse his default. Petitioner, however, has not shown that trial counsel was ineffective. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to

undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Petitioner has not established that defense counsel was deficient.  Trial counsel may have reasonably decided not to object to the prosecution's alleged misconduct in order to avoid drawing more attention to such matters, or for other strategic reasons.  The record reveals that counsel was well-prepared for trial, effectively cross-examined witnesses, and made relevant and timely objections.  Petitioner has not shown that trial counsel acted outside the range of reasonable conduct.

Moreover, Petitioner cannot establish that he was prejudiced for purposes of establishing cause or establishing prejudice to excuse his default as these claims lack merit for the reasons set forth *infra*.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  The afore-mentioned prosecutorial misconduct

11

claims are thus barred by procedural default and subject to dismissal.

           2.       Merits

It is well-settled that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The reviewing court's focus is on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra*, 4 F.3d at 1355).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett*, 117 F.3d at 964 (citations omitted).

a.       DNA Evidence

Petitioner first alleges that the prosecutor erred in stating that it was probable that the blood of both victims was on Petitioner's jacket because the evidence presented at trial did not justify such a conclusion.  It is well-settled that it is misconduct for a prosecutor to misstate the evidence or to assume the existence of prejudicial facts not in evidence.  *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir. 2001).  In reviewing this claim for plain error, the Michigan Court of Appeals found that the prosecutor's comments were improper but concluded that the error was not outcome determinative.  *See Willson*, 2002 WL 484617 at *1.

This Court agrees.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict).  Harmless error analysis applies to claims of prosecutorial misconduct.  *See Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).

In this case, any improper comments by the prosecutor concerning the DNA evidence were harmless given the significant evidence of Petitioner's guilt, particularly the testimony of victim Shanna Young.  The prosecution also presented other inculpatory DNA evidence, namely that Petitioner's DNA was consistent with sperm taken from Cassandra Young's vaginal swab and that blood on Petitioner's shorts was consistent with Cassandra Young's blood sample.  Further, the prosecutor correctly stated that the expert testimony was that neither Petitioner, Cassandra Young, nor Shanna Young could be excluded as a contributor of the blood

13

on the jacket.  Given these circumstances, the Court concludes that any improper remark concerning the jacket did not deprive Petitioner of a fair trial.

        b.      Burden of Proof

Petitioner also claims that the prosecutor shifted the burden of proof by commenting on Petitioner's failure to call a witness, a man named Rock, in support of his alibi defense.  While it is improper for the prosecution to impliedly shift the burden of proof to a defendant, *see United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993), a prosecutor may argue from the facts that a witness, including a testifying defendant, is not worthy of belief.  *See, e.g, Portuondo v. Agard*, 529 U.S. 61, 69 (2000) (prosecutor's argument that defendant had opportunity to hear other witnesses and tailor his testimony was proper because comments were directed at defendant's status as a witness whose credibility was subject to attack).  Additionally, a prosecutor has leeway to argue reasonable inferences from the evidence.  *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

In this case, the Michigan Court of Appeals concluded that the prosecutor's comments were proper remarks on the validity of Petitioner's defense theory and his credibility as a witness.  *See Willson*, 2002 WL 484617 at *2.  This decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts.  The prosecutor's comments were a permissible attack on the defense theory of the case, as well as Petitioner's credibility as a witness.  The prosecutor argued that Petitioner was lying when he testified that he was with a man named Rock at the time of the crime and that Rock was fictitious.  The prosecutor did not improperly shift the burden of proof to the defense.

Further, to the extent that the prosecutor's comments could be seen as improper, they were not so flagrant as to deprive Petitioner of a fair trial.  The remarks, although deliberate,

were isolated in nature.  Also, the prosecution presented significant evidence to establish

Petitioner's guilt, including the testimony of Shanna Young.  Lastly, the potential prejudice to

Petitioner was alleviated by the trial court's instructions, which clearly stated that the attorneys'

comments were not evidence, that Petitioner was innocent until proven guilty, and that the

prosecution had the burden of proving Petitioner's guilt beyond a reasonable doubt.  *See Russ v.

Stegall*, 2000 WL 791753, *4 (E.D. Mich. June 8, 2000) (Cohn, J.).  The disputed comments did

not deprive Petitioner of a fair trial.

    c. <u>Premeditation</u>

   Petitioner next claims that the prosecutor misrepresented the element of premeditation

by explaining that the amount of time necessary for premeditation is akin to one's decision to

stop or go through a yellow traffic signal.  He also asserts that the prosecutor erroneously stated

that defense counsel had conceded the element of premeditation.  Clearly, a prosecutor has a

duty to neither misrepresent the law, *see Hicks v. Collins*, 384 F.3d 204, 225 (6th Cir. 2004)

(Clay, J., concurring in part and dissenting in part) (citing *Le v. Mullin*, 311 F.3d 1002, 1022

(10th Cir. 2002)), nor misstate the evidence.  *See Darden*, 477 U.S. at 182.

   The Michigan Court of Appeals concluded that any prosecutorial error in explaining

premeditation to the jury was harmless and that the prosecutor correctly stated that Petitioner

suggested that he was not contesting the element of premeditation.  *See Willson*, 2002 WL

484617 at *2.  This decision is neither contrary to Supreme Court precedent nor an

unreasonable application thereof or the facts.  First, to the extent the prosecutor's analogy on

premeditation was faulty, the error was not so flagrant as to deny Petitioner a fair trial.  While

the explanation was deliberate, it was done during opening statements, was not intended to

mislead the jury, and was relatively isolated in nature.  Moreover, the trial court correctly

instructed the jury on premeditation and the other elements of the charged offenses at the close of trial.  Additionally, as discussed *supra*, there was significant evidence to support Petitioner's first-degree murder conviction.  Lastly, Petitioner's presented an alibi defense when he testified and did not contest the element of premeditation.  Given these circumstances, the Court concludes that the prosecutor's remarks did not deprive Petitioner of a fundamentally fair trial.

d.   <u>Woman's Intuition</u>

Petitioner also asserts that the prosecutor argued facts not in evidence by stating that Shanna Young probably did not like Petitioner because of an "intuition" about him which proved to be correct.  As noted, it is well-settled that a prosecutor may not argue facts not in evidence.  *See Darden*, 477 U.S. at 182.

The Michigan Court of Appeals concluded that the prosecutor was properly making reasonable inferences from the evidence and responding to defense arguments when he made the disputed statement.  *See Willson*, 2002 WL 484617 at *2.  This Court agrees.  Shanna Young admitted that she did not like Petitioner.  Defense counsel argued that Shanna was mistaken about the perpetrator's identity and that she blamed Petitioner for the crime because she did not like him.  The prosecutor's statement was an appropriate inference from the evidence and a proper response to defense counsel's argument.  The prosecutor did not urge the jury to find Petitioner guilty based upon a woman's intuition.  Petitioner has thus failed to establish that the prosecutor erred or that he was denied a fundamentally fair trial.

e.   <u>Gruesome Photograph</u>

Petitioner next alleges that the prosecutor improperly appealed to juror sympathy by repeatedly questioning him about the gruesome photographs of the crime scene.  Generally, a prosecutor cannot take actions which are "calculated to incite the passions and prejudices of the

16

jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6ᵗʰ Cir. 1991).

In this case, the Michigan Court of Appeals determined that the prosecutor was arguing that Petitioner was the perpetrator of the crimes and was not making an improper appeal for sympathy. *Willson*, 2002 WL 484617 at *2. This Court agrees. The prosecutor's questions were appropriate cross-examination and the photographs were relevant and material. The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial. *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6ᵗʰ Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9ᵗʰ Cir. 1997), for proposition that such photographs do not raise the "spectre of fundamental fairness such as to violate federal due process of law"). Petitioner has not shown that the prosecutor erred or that he was unfairly prejudiced in this regard.

f.      Sequestration Order

Lastly, Petitioner asserts that the prosecutor intentionally violated the trial court's sequestration order by failing to remove certain prosecution witnesses from the courtroom during the prosecution's opening statement. The Michigan Court of Appeals rejected this claim finding that Petitioner had failed to establish that the pertinent witnesses were improperly influenced by opening statements or that he was prejudiced by their presence in the courtroom. *See Willson*, 2002 WL 484617 at *3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. A trial court's failure to sequester witnesses does not amount to the deprivation of a constitutional right and therefore cannot form the basis of federal habeas relief. *See Mathis v. Wainwright*, 351 F.2d 489, 489 (5ᵗʰ Cir. 1965) (noting that the failure to sequester witnesses does not amount to a deprivation of constitutional rights); *King v. Elo*, 2000 WL

17

791721, *10 (E.D. Mich. May 25, 2000) (same).  Furthermore, Petitioner has not established

that the prosecutor intentionally violated the sequestration order, that the witnesses' were

unduly influenced, or that his defense was prejudiced by such conduct.  He has thus failed to

establish a basis for relief as to this claim.

Accordingly, for the reasons stated, the Court concludes that Petitioner's prosecutorial

misconduct claims are barred by procedural default and/or lack merit, and do not warrant

federal habeas relief.

B.      Double Jeopardy Claim

Petitioner next asserts that he is entitled to habeas relief because his second-degree

murder conviction and two of his criminal sexual conduct convictions violate double jeopardy.

Respondent contends that this claim lacks merit.

The Fifth Amendment to the United States Constitution commands that no "person be

subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.

The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause

of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides

three basic protections: "[It] protects against a second prosecution for the same offense after

acquittal.  It protects against a second prosecution for the same offense after conviction.  And it

protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395

U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise

that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*,

510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

The Michigan Court of Appeals vacated Petitioner's second-degree murder conviction

and one of his first-degree criminal sexual conduct convictions on double jeopardy grounds.

18

*See Willson*, 2002 WL 484617 at *3.  Consequently, there is no additional relief to be granted by this Court with respect to those convictions.  The remaining issue is whether Petitioner was properly convicted of two counts of first-degree criminal sexual conduct.

The Michigan Court of Appeals concluded that Petitioner was properly convicted of two counts of first-degree criminal sexual conduct because the evidence at trial indicated that Petitioner penetrated the victim twice.  *Id*.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.  Under Michigan law, a defendant charged with first-degree criminal sexual conduct may be convicted and punished for each separate act of penetration.  *See People v. Dowdy*, 148 Mich. App. 517, 521, 384 N.W.2d 820 (1986).  At trial, Shanna Young testified that Petitioner penetrated her twice during the assault, once on the couch and once on the chair.  This testimony provides sufficient evidence to justify two criminal sexual conduct convictions under Michigan law.  Petitioner is thus not entitled to relief on his double jeopardy claim.

    C.    <u>Ineffective Assistance of Counsel Claim</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to make pretrial motions, present a defense, investigate and interview potential alibi witnesses, and discover or discredit the prosecution's evidence.  Respondent contends that this claim lacks merit.

The Michigan appellate courts denied Petitioner's requests for remand, but did not specifically address the ineffective assistance issue in a reasoned opinion.  Accordingly, this Court must conduct an independent review of the state court decisions.  *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal

19

law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* This independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

As discussed *supra*, the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient such that counsel acted outside the wide range of professional assistance. *Strickland*, 466 U.S. at 687-90. Second, the petitioner must establish that the deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the petitioner of a fair trial or appeal. *Id.*

Petitioner has made no such showing. Petitioner has not established that defense counsel failed to take reasonable steps to prepare for trial, interview witnesses, investigate potential defenses, or challenge the prosecution's case. Petitioner fails to allege with any specificity what motions, witnesses, defenses, or exculpatory evidence counsel should have investigated or produced at trial. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). The record reveals that trial counsel took reasonable steps to refute the prosecution's case by cross-examining witnesses, challenging the physical evidence, and presenting Petitioner's defense such that his performance was not deficient under *Strickland, supra*. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel

was ineffective.  *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an

ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's

trial counsel were reasonable, even if mistaken").

Moreover, given the evidence presented at trial, particularly Shanna Young's testimony,

and the fact that Petitioner offers no new additional evidence in support of his defense,

Petitioner cannot establish that he was prejudiced by trial counsel's conduct.  He has thus failed

to satisfy either prong of the *Strickland* test for ineffective assistance of counsel.  Habeas relief

is not warranted on this claim.

**V.      Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal

habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of

appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the

district court's assessment of the constitutional claim debatable or wrong.  *See Slack v.

McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating

that . . . jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a

district court may not conduct a full merits review, but must limit its examination to a threshold

inquiry into the underlying merit of the petitioner's claims.  *Id*. at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

For the reasons stated *supra*, this Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. Additionally, reasonable jurists would not find this Court's procedural ruling debatable. No certificate of appealability is warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed on appeal *in forma pauperis* is **DENIED**.

s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: August 10, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 10, 2005.

s/Jonie Parker_____
Case Manager

22